UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MALONEY SEPT., L.L.C. | CIVIL ACTION |
| VERSUS | NO. 12-2444 |
| HOME DEPOT U.S.A., INC. | SECTION "N" (3) |

**ORDER AND REASONS**

On July 5, 2013, the Court entered an Order and Reasons granting summary judgment in Plaintiff's favor, but denying it as to damages. See Rec. Doc. 49. The Court also denied Defendant's motions for summary judgment and to exclude Plaintiff's expert. *Id.* Thereafter, following the parties' representations that the remaining damages issues could be properly determined by means of written submissions, in lieu of trial, the Court cancelled the July 11, 2013 trial date, and set deadlines for submission of memoranda regarding damages. See Rec. Doc. 51. Presently pending before the Court are the parties' damages submissions and a motion for reconsideration filed by Defendant relative to the Court's July 5, 2013 rulings granting summary judgment in Plaintiff's favor regarding liability and denying Defendant's motions for summary judgment and to exclude Plaintiff's expert. See Rec. Docs. 52 and 54-57.

**ANALYSIS**

Having carefully reviewed the parties' submissions, the record in this matter, and applicable law, the Court finds Defendant's requests for reconsideration to be unfounded. In short, the Court previously considered Defendant's arguments regarding the various provisions of the

December 8, 2006 Lease, the March 6, 2008 Settlement Agreement, and the report submitted by Alfred Blossman, III (Rec. Docs. 24-3 and 25-2), in issuing its July 5, 2013 ruling, and is not persuaded that its conclusions regarding those arguments warrant modification. Accordingly, **IT IS ORDERED** that Defendant's motion for reconsideration (Rec. Doc. 52) is **DENIED**.

In reaching this conclusion, the Court notes that, with respect to the condition of the leased premises' parking lot, adverse conditions of the parking lot were not among the repairs and improvements that Section 8.4 of the December 8, 2006 Lease charged Plaintiff, as Lessor, with completing. On the other hand, according to Section 8.1 of the Lease, "Tenant's Repairs to Premises," measures necessary to maintain the premises "in reasonably good condition," unless caused by the willful acts or negligence of Plaintiff, were Defendant's responsibility. See Rec. Doc. 24-3, pp. 17-18. The parties' submissions undisputedly reflect that, during the course of the Lease term, the condition of the parking lot worsened, following commencement of Defendant's "Pro Yard" operations, such that reparative action was required to ensure the safety of "customers alighting from their vehicles" and "the safe operation of vehicles and forklifts needed to handled and transport merchandise."[1]

---

[1] See Defendant's Memorandum in Support of Summary Judgment (Rec. Doc. 24-2, p. 9)(citing the April 29, 2013 Affidavit of Deborah Wold)("[P]ursuant to Home Depot's right and duty of maintenance established in Paragraph 8.1, Home Depot's construction of the concrete overlay also constituted a repair to the parking lot on the Premises, which presented a safety hazard. Home Depot was required to undertake the construction of the concrete overlay, as a necessary improvement and repair. Without the concrete overlay, hazardous potholes, sunken spots, and cracking, deformed asphalt endangered customers alighting from their vehicles and prevented the safe operation of vehicles and forklifts needed to handle and transport merchandise."); see also May 7, 2013 Affidavit of Kurt B. Maloney (Rec. Doc. 26-2, ¶4)("At the time Home Depot took possession of the Premises, the parking lot was in good condition. [It] began to show wear and damage after Home Depot began using it as a "pro yard."); June 21, 2013 Transcript of Deborah Wold Deposition (Rec. Doc. 52-3, p. 38 ("We were already showing signs of deterioration pretty quickly after we took the building over. The asphalt did not hold up to the forklifts and the weight

Additionally, with respect to the March 6, 2008 settlement agreement, the Court recognizes the release language cited by Defendant is broadly worded. See Rec. Doc. 24-3, pp. 54-55, ¶2. That language, however, does not expressly reference "future claims," which is particularly significant when considered together with the absence of any mention in the agreement of the parking lot, or the "Pro Yard" concrete overlay;[2] the more limiting language in the agreement's introductory sentence and paragraphs A, B, and C[3]; that the agreement was executed in the second year of what ultimately could have been (upon exercise of yearly extension options) a ten-year commercial lease (during which any number of future disputes could have arisen); and that Defendant's intent to leave the concrete overlay in place following the end of the lease was not apparent until August 15, 2011.[4] Under these circumstances, the Court will not assume that the parties intended the March 6, 2008 settlement agreement to encompass and preclude Plaintiff's instant claim.

---

of the, you know . . . . ); *Id.* at 38-39 (agreeing that "there was a rapid deterioration in the condition of the asphalt" after Defendant took possession and attributing it to a combination of moisture and the weight of the equipment). The need for such repairs could not have been a surprise to Defendant considering that the October 23, 2006 Pre-Acquisition Reconnaissance Site Visit Report ("October 23, 2006 Report") (Rec. Doc. 26-4, p. 3), prepared at Defendant's request, advised: "Based on visual observations and discussions with the testing agency (PSI), the asphalt parking area may be damaged by material storage and heavy traffic."

[2] Defendant installed the concrete overlay in the fall of 2007. *See* Affidavit of Deborah Wold (Rec. Doc. 24-4), ¶¶ 5-7.

[3] The introductory sentence provides: "This Settlement Agreement and Release ('Agreement') is entered into as of March 6, 2008 (the 'Effective Date'), by and between [Plaintiff] (the 'Landlord') and [Defendant] ('Home Depot') with respect to the following facts:" and is followed by Paragraphs A, B, and C, which identify the December 8, 2006 Lease, Plaintiff's repair obligation under Section 8.4 of the Lease (referred to in the Agreement as "HD's Building Repairs") and Plaintiff's claimed loss of revenue from three (3) parking spaces acquired by Defendant when the premises was re-platted (referred to in the Agreement as "Landlord's Parking Loss Claim").

[4] See Plaintiff's Reply Memorandum in Support of Summary Judgment (Rec. Doc. 40, p. 8, n. 18 (referencing Defendant's agent's August 15, 2011 notification).

Turning to the issue of damages, the Court, having carefully reviewed the parties' submissions, concludes Defendant's proposal – curbing the raised edges of the concrete overlay so as to provide a gradually sloping perimeter allowing safe vehicular and pedestrian ingress and egress[5]– constitutes a reasonable repair as contemplated by Section 8.1 of the December 8, 2006 Lease. Specifically, Defendant's proffered modification would render the concrete overlay serviceable for parking, as intended by the parties at the inception of the Lease. In reaching this conclusion, the Court notes the absence of any evidence in Plaintiff's damages submission demonstrating that the concrete overlay, as modified, would present drainage problems remediable only by removing the slab and restoring the underlying asphalt.[6] Furthermore, as Defendant emphasizes, the Lease, while requiring that it make necessary repairs, also allowed Defendant to "make improvements and alterations" to the leased premises, including "one or more temporary or permanent outdoor sales facilities, so long as [it] complied with all applicable Requirements"; to surrender the leased premises "in its then existing condition"; and, in any event, did not require

---

[5] See Rec. Docs. 55, pp. 6-8, and 55-5, pp. 1-5.

[6] If removing the slab and installing new asphalt were necessary, the Court's damages calculation would be based upon the 16,900 square footage (actual) measure recently provided, on Plaintiff's behalf, by Blossman (see Rec. Docs. 57, p. 7 and 57-1, ¶¶ 4-5), rather than the 20,000 square feet estimate originally urged by Plaintiff (see Rec. Doc. 54, p.3, and Rec. Doc. 52-4, p. 94), or the 14,000 square feet urged by Defendant (see Rec. Doc. 55, pp. 2-4). Although footnote two of the Court's July 5, 2013 Order and Reasons refers to the "Pro Yard" as an enclosed area of approximately 14,000 square feet (see Rec. Doc. 49, p. 2, n.2), that reference, given that no finding regarding quantum of damages was made, does not constitute an established judicial finding.

4

Defendant to upgrade the circa 1960's parking lot asphalt. Accordingly, for the reasons stated herein, **IT IS ORDERED** that Defendant pay damages of $34,200,[7] plus legal interest and costs, to Plaintiff in full satisfaction of Plaintiff's claims.

New Orleans, Louisiana, this 10th day of October 2013.

_____
**KURT D. ENGELHARDT**
**United States District Judge**

---

[7] This is the corresponding dollar amount reflected in the cost estimate and bid provided by James J. Kenney & Co., Inc. See Rec. Doc. 55-5, pp. 1-5.